Michael E. Waller
William H. Hyatt, Jr.
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Attorneys for Defendant Alcoa Inc. and
Alcoa Domestic LLC, as successor in
interest to Defendant A.P. New Jersey, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH RIVER MEWS ASSOCIATES, LLC and 38 COAH ASSOCIATES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALCOA CORPORATION; A.P. NEW JERSEY, INC.;  and JOHN DOES 1-25 (fictitious names),<br><br>Defendants,<br><br>v.<br><br>RIVER ROAD IMPROVEMENT PHASE II, INC. and FRED A. DAIBES,<br><br>Counterclaim-Defendants. | Civil Action No.: 2:14-CV-08129 (MCA-JBC)<br><br>**ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES,  AND COUNTERCLAIMS**<br><br>***Document Filed Electronically*** |

Alcoa Inc. (incorrectly named as "Alcoa Corporation") and Alcoa Domestic LLC, as the

successor in interest to A.P. New Jersey, Inc., (collectively "Alcoa") by their counsel K&L Gates

LLP, answer the Plaintiffs' First Amended Complaint as follows:

### THE PARTIES

1.      Alcoa admits the allegations set forth in Paragraph 1.

2.      Alcoa refers to the First Amended Complaint in this action for the language

therein and its exact meaning and effect.

3.      Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3, except admits that in 1997 the lot and blocks making up "the Property" as defined in the First Amended Complaint was conveyed to Plaintiff North River Mews Associates, LLC.

4.      Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 4.

5.      Alcoa denies the allegations set forth in Paragraph 5, except to admit that Alcoa Inc. is a Pennsylvania corporation with offices at 201 Isabella Street, Pittsburgh, Pennsylvania 15212, and that at one time Alcoa Inc. owned property identified as "the Property" in the First Amended Complaint, which was conveyed to Plaintiff North River Mews Associates, LLC in 1997.

6.      Alcoa denies the allegations set forth in Paragraph 6, except to admit that A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010, and that at one time A.P. New Jersey, Inc. owned property identified as "the Property" in the First Amended Complaint, which was conveyed to Plaintiff North River Mews Associates, LLC in 1997.

7.      Inasmuch as Paragraph 7 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

8.      Alcoa refers to the First Amended Complaint in this action for the language therein and its exact meaning and effect.

## JURISDICTION AND VENUE

9.      Alcoa can neither admit nor deny the allegations set forth in Paragraph 9, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

10.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 10, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

11.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 11, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

12.     Alcoa objects to the allegations contained in Paragraph 12 to the extent that Paragraph states conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 12 except to admit that Alcoa conducts business in the State of New Jersey.

## BACKGROUND

13.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13.

14.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 14.

15.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 15.

16.     Alcoa denies the allegations set forth in Paragraph 16.

17.     Alcoa denies the allegations set forth in Paragraph 17, except to admit that A.P. New Jersey, Inc. disclosed reports detailing known environmental conditions on the Property and permitted Plaintiff North River Mews Associates, LLC to inspect the Property before Plaintiff North River Mews Associates, LLC purchased the Property in 1997.

18.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 18.

19.     Alcoa denies the allegations set forth in Paragraph 19.

20.   Alcoa admits the allegations set forth in Paragraph 20.

21.   Alcoa denies the allegations set forth in Paragraph 21.

22.   Alcoa denies the allegations set forth in Paragraph 22, except to admit that A.P. New Jersey, Inc., pursuant to specific contractual conditions not referenced in the First Amended Complaint, agreed to pay Plaintiff North River Mews Associates, LLC for some of its costs to remediate certain PCB contamination.

23.   Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 23.

24.   Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24.

25.   Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 25.

## FIRST COUNT
## COST RECOVERY UNDER CERCLA § 107

26.   Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 26 of the First Amended Complaint.

27.   Alcoa refers to Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), for the language therein and its exact meaning and effect.

28.   Alcoa refers to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), for the language therein and its exact meaning and effect.

29.   Alcoa refers to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), for the language therein and its exact meaning and effect.

30.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 30, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.  Alcoa admits that Alcoa Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania. Alcoa admits that A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010.

31.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 31, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

32.     Alcoa denies the allegations contained in Paragraph 32 because they are unrelated to any time period, entity, location, or occurrence that has any consequence to the allegations of the First Amended Complaint.

33.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 33, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

34.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 34.

35.     Alcoa denies the allegations contained in Paragraph 35.

36.     Alcoa denies that Plaintiffs are entitled to the relief set out in Paragraph 36.

## SECOND COUNT
## CERCLA § 113 CLAIMS

37.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 37 of the First Amended Complaint.

38.     Alcoa refers to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for the language therein and its exact meaning and effect.

39.     Alcoa denies that Plaintiffs are entitled to the relief set out in Paragraph 39.

## THIRD COUNT
## DECLARATORY JUDGMENT

40.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 40 of the First Amended Complaint.

41.     Alcoa refers to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), 28 U.S.C. §§ 2201 and 2202, and N.J.S.A. § 2A:16-50 for the language therein and its exact meaning and effect.  Nonetheless, Alcoa denies that it is liable to Plaintiffs under Section 113 of CERCLA, 42 U.S.C. § 9613(f).

42.     Alcoa admits the allegations set forth in Paragraph 42.

43.     Alcoa denies that Plaintiffs are entitled to the relief set out in Paragraph 43.

## FOURTH COUNT
## STRICT LIABILITY

44.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 44 of the First Amended Complaint.

45.     Alcoa denies the allegations contained in Paragraph 45.

46.     Alcoa denies the allegations contained in Paragraph 46.

47.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 47.

48.     Alcoa denies the allegations contained in Paragraph 48.

49.     Alcoa denies the allegations contained in Paragraph 49.  Alcoa also denies that Plaintiffs are entitled to the relief set out in Paragraph 49.

## FIFTH COUNT
## NEGLIGENCE

50.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 50 of the First Amended Complaint.

51.     Alcoa denies the allegations contained in Paragraph 51.

52.     Alcoa denies the allegations contained in Paragraph 52.

53.     Alcoa denies the allegations contained in Paragraph 53.

54.     Alcoa denies the allegations contained in Paragraph 54.

55.     Alcoa denies the allegations contained in Paragraph 55.

56.     Alcoa denies the allegations contained in Paragraph 56.  Alcoa also denies that Plaintiffs are entitled to the relief set out in Paragraph 56.

## SIXTH COUNT
## SPILL ACT CONTRIBUTION

62.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 62 of the First Amended Complaint.[1]

63.     Alcoa refers to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, for the language therein and its exact meaning and effect.

64.     Alcoa objects to the allegations contained in Paragraph 64 as that Paragraph states legal conclusions to which no responsive pleading is required. Alcoa Inc. admits that it is a corporation organized under the laws of the Commonwealth of Pennsylvania.  Alcoa admits that

---

[1] The paragraph numbering of Plaintiffs' First Amended Complaint skips numbers 57 through 61.

A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010.

65.    Alcoa objects to the allegations contained in Paragraph 65 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 65.

66.    Alcoa objects to the allegations contained in Paragraph 66 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 66.

67.    Alcoa objects to the allegations contained in Paragraph 67 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 67.

68.    Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 68.

69.    Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 69.  Nonetheless, Alcoa denies that Plaintiffs are entitled to the relief described in that Paragraph.

## SEVENTH COUNT
## NEGLIGENT OR FRAUDULENT CONCEALMENT

74.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 74 of the First Amended Complaint.[2]

75.    Alcoa denies the allegations set forth in Paragraph 75, except to admit that Alcoa Inc. stored substances containing PCBs at the Property during Alcoa Inc.'s ownership of the

---

[2] The paragraph numbering of Plaintiffs' First Amended Complaint skips numbers 70 through 73.

Property and that substances containing PCBs were present on the Property during A.P. New Jersey, Inc.'s ownership of the Property.

76.     Alcoa denies the allegations contained in Paragraph 76.

77.     Alcoa denies the allegations contained in Paragraph 77.

78.     Alcoa denies the allegations contained in Paragraph 78.

79.     Alcoa denies the allegations contained in Paragraph 79.

80.     Alcoa denies the allegations contained in Paragraph 80.

81.     Alcoa denies the allegations contained in Paragraph 81.

82.     Alcoa objects to the allegations contained in Paragraph 82 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 82.

83.     Alcoa denies the allegations contained in Paragraph 83.  Alcoa also denies that Plaintiffs are entitled to the relief set out in Paragraph 83.

## EIGHTH COUNT
## BREACH OF CONTRACT

84.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 84 of the First Amended Complaint.

85.     Alcoa denies the allegations set forth in Paragraph 85, except to admit that A.P. New Jersey, Inc., pursuant to specific contractual conditions not referenced in the First Amended Complaint, agreed to pay Plaintiff North River Mews Associates, LLC for some of its costs to remediate certain PCB contamination.

86.     Alcoa denies the allegations contained in Paragraph 86.

87.     Alcoa denies the allegations contained in Paragraph 87.  Alcoa also denies that Plaintiffs are entitled to the relief set out in Paragraph 87.

## NINTH COUNT
## UNJUST ENRICHMENT

88.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 88 of the First Amended Complaint.

89.     To the extent it alleges that Plaintiffs have incurred or will incur costs for remediation of the Property, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 89.  Alcoa denies the remaining allegations of Paragraph 89.

90.     To the extent it alleges that Plaintiffs have incurred or will incur costs for remediation of the Property, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 90.  Alcoa objects to the allegations contained in Paragraph 90 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 90.

91.     Alcoa objects to the allegations contained in Paragraph 91 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 91.  Furthermore, Alcoa denies that Plaintiffs are entitled to the relief described in that Paragraph.

## TENTH COUNT
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

92.     Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 92 of the First Amended Complaint.

93.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 93, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

94.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 94, inasmuch as it makes legal conclusions to which Alcoa is not required to respond.

95.     Alcoa objects to the allegations contained in Paragraph 95 to the extent that Paragraph states legal conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 95.

96.     Alcoa denies the allegations contained in Paragraph 96.

97.     Alcoa denies the allegations set forth in Paragraph 97.  Alcoa also denies that Plaintiffs are entitled to the relief set out in Paragraph 97.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by reason of laches, estoppel, waiver, consent, unclean hands, res judicata, and/or other equitable defenses.

## THIRD AFFIRMATIVE DEFENSE

The applicable statute or statutes of limitations or other applicable law, rule, statute or regulation controlling or requiring the institution of suit within a certain period of time following its accrual, was not complied with by Plaintiffs, for some or all of Plaintiffs' alleged costs; accordingly, Plaintiffs' claims are barred as a matter of law.

## FOURTH AFFIRMATIVE DEFENSE

The First Amended Complaint does not describe the claims made with sufficient particularity to determine what defenses may apply and Alcoa reserves the right to assert additional affirmative defenses as discovery progresses.  Alcoa adopts and incorporates herein all defenses raised by any future Defendants or Third-Party Defendants, except to the extent that such defenses would shift liability to Alcoa.

## FIFTH AFFIRMATIVE DEFENSE

Alcoa has a complete defense to any liability under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA") pursuant to CERCLA § 107(b)(3), 42 U.S.C. § 9607(b)(3), inasmuch as the alleged release or threatened release was caused solely by the acts or omissions of unrelated third parties who were not agents or employees of Alcoa and with whom Alcoa had no contractual relationship; Alcoa exercised due care as to any alleged hazardous substances; and Alcoa took precautions against foreseeable third-party acts or omissions, and against the foreseeable consequences of such acts or omissions, within the meaning of CERCLA § 107(b), 42 U.S.C. § 9607(b).

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has no claim under CERCLA because Plaintiff has failed to establish a prima facie case.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has no claim under CERCLA because Alcoa Inc. and A.P. New Jersey, Inc. are not covered persons within the meaning of CERCLA.

## EIGHTH AFFIRMATIVE DEFENSE

"Hazardous substances," as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14) were not released into the environment by Alcoa within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22). Even if there were "hazardous substances," as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14) released into the environment by Alcoa within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22), which Alcoa denies, such release did not include the alleged contamination that is the subject of this Action.

## NINTH AFFIRMATIVE DEFENSE

The costs incurred or to be incurred by Plaintiffs and which Plaintiffs seek to recover in this action are not recoverable to the extent that they are not necessary costs of response consistent with the National Contingency Plan.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege or establish the required nexus between Alcoa and the property and alleged response costs that are the subject of this Action.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that Plaintiffs did not comply with the statutory and/or regulatory prerequisites necessary to bring a CERCLA action.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that any or all of the Defendants are found liable in this matter, joint and several liability is inappropriate because the harms are divisible and there are reasonable bases for apportionment of the harms suffered.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have no claim under the Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11 *et seq.* ("Spill Act" or "Act") because neither Alcoa Inc. nor A.P. New Jersey, Inc. are dischargers and/or responsible persons within the meaning of the Act, and/or Plaintiffs' damages, if any, are the result of conduct occurring prior to the effective date of the Spill Act.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that Plaintiffs did not comply with the requirements and prerequisites of the Spill Act.

## FIFTEENTH AFFIRMATIVE DEFENSE

In the event that Plaintiffs are entitled to contribution under the Spill Act, such relief is limited to "clean up and removal costs" as defined at N.J.S.A. § 58:10-23b.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the statutory defenses to liability provided by the Spill Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Plaintiffs' own breach of contract.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction by reason of Plaintiffs' failure to mitigate their alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages have been caused solely by the acts of third parties over whom Alcoa had no control or right of control or by superseding or intervening conduct of others outside of Alcoa's control.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction because the damages claimed include costs that are not reasonable or necessary.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the terms of the contract between the parties.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by Plaintiffs' releases, which waived Plaintiffs' right to seek contribution for response costs or claims arising from the actions or inactions of previous owners relating to PCBs or other hazardous substances as defined by the applicable environmental laws.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of set off.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of recoupment.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Without conceding any detrimental reliance on the part of Plaintiffs, any such reliance by the Plaintiffs was unreasonable because Plaintiffs were aware of the presence of PCBs on the Property, had access to environmental reports detailing the conditions of the Property including PCBs, had the opportunity to inspect the Property, and expressly disclaimed reliance on

representations regarding, among other things, the presence or removal of hazardous or toxic materials, substances, or wastes in, on, under, or about the Property.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Any loss suffered by Plaintiffs was as a result of their own negligence, or the negligence or fault of their agents, which negligence or fault is greater than any alleged negligence of Alcoa, which negligence is specifically denied.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The damages which Plaintiffs seek, if awarded, would unjustly enrich Plaintiffs.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction by reason of Plaintiffs' own contributory negligence.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction by reason of the doctrine of comparative negligence or the Joint Tortfeasor Contribution Act.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Alcoa's conduct was in accordance with the course of dealing established between Plaintiffs' and Alcoa.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction because Alcoa is entitled to common law indemnification from Plaintiffs.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or subject to reduction because Alcoa is entitled to common law contribution from Plaintiffs.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred insofar as Plaintiffs seek to recover costs that they have incurred or will incur to comply with their independent legal obligations under state and federal environmental laws regardless of any act or omission by Alcoa.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs knew of the presence of hazardous substances, including PCBs, but Plaintiffs assumed the risk of contamination when they willingly purchased the property; thus, Alcoa is not liable to Plaintiffs in strict liability for an abnormally dangerous activity.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' own bad faith bars their claim for breach of the implied covenant of good faith and fair dealing.

## COUNTERCLAIMS

Defendant Alcoa Inc. (incorrectly named as "Alcoa Corporation"), a Pennsylvania corporation having its principal place of business at 390 Park Avenue, New York, New York 10022-4608, and Alcoa Domestic LLC, a Delaware limited liability company having its principal place of business at 201 Isabella Street, Pittsburgh, Pennsylvania 15212-5858, as the successor in interest to Defendant A.P. New Jersey, Inc., (collectively "Alcoa") by their counsel K&L Gates LLP, by way of counterclaim against the Plaintiffs, North River Mews Associates, LLC and 38 COAH Associates, LLC, and against Counterclaim-Defendants River Road Improvement Phase II, Inc. and Fred A. Daibes, say:

## THE PARTIES

1.     Plaintiff North River Mews Associates, LLC ("North River") is a New Jersey limited liability company with offices at 1000 Portside Drive, Edgewater, New Jersey 07020.

2.     Plaintiff 38 COAH Associates, LLC ("38 COAH") is a New Jersey limited liability company with offices at 1000 Portside Drive, Edgewater, New Jersey 07020.

3.     Counterclaim-Defendant River Road Improvement Phase II, Inc. ("RRIP") is a New Jersey corporation with a business address at P.O. Box 36, Edgewater, New Jersey 07020.

4.     Counterclaim-Defendant Fred A. Daibes ("Daibes") is an individual domiciled in the state of New Jersey.  On information and belief, at all relevant times, Daibes owned or controlled North River, 38 COAH, and RRIP.

## JURISDICTION AND VENUE

5.     These counterclaims arise under federal law, 42 U.S.C. § 9613(f).  The United States District Court has original jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1331.

18

6.    This court has supplemental jurisdiction over Alcoa's state law counterclaims pursuant to 28 U.S.C. § 1367(a) because Alcoa's state law counterclaims are related to the same case or controversy as Alcoa's counterclaim for contribution under 42 U.S.C. § 9613(f).

7.    Plaintiffs have consented to venue in this court by filing their First Amended Complaint.  Venue is also proper in this court pursuant to 42 U.S.C. § 9613(b), as the alleged release or damages occurred in this district.  Furthermore, a substantial part of the actions or omissions giving rise to these counterclaims occurred in this district.

## STATEMENT OF COUNTERCLAIMS

8.    North River was formed on or about May 1, 1997 for the purpose of real estate development.

9.    RRIP was incorporated on or about May 2, 1997.

10.    On or about June 27, 1997, Defendant A.P. New Jersey, Inc. ("A.P."), North River, and RRIP, among other parties, entered into a valid contract (the "Multi-Party Property Acquisition Agreement"), pursuant to which North River agreed to buy certain property in the Borough of Edgewater from A.P.  A copy of the Multi-Party Property Acquisition Agreement is annexed hereto as Exhibit A.

11.    The property North River purchased from A.P. encompasses the "Property" that is defined in the Plaintiffs' First Amended Complaint and that is the subject of the First Amended Complaint.

12.    Daibes executed the Multi-Party Property Acquisition Agreement on behalf of North River as the managing member of North River.

13.    Daibes executed the Multi-Party Property Acquisition Agreement on behalf of RRIP as the president of RRIP.

14.     Pursuant to Paragraph 2 of the Multi-Party Property Acquisition Agreement, North River and RRIP agreed to demolish and remove structures on the Property.

15.     Also pursuant to Paragraph 2 of the Multi-Party Property Acquisition Agreement, North River and RRIP further agreed that this demolition and removal would be completed in accordance with the Remedial Action Workplan submitted to the New Jersey Department of Environmental Protection and with the demolition plan reviewed and approved by A.P.

16.     Pursuant to Paragraph 16 of the Multi-Party Property Acquisition Agreement, North River and RRIP agreed to defend and save A.P. harmless from any and all claims arising from the performance of that Agreement.

17.     Also pursuant to Paragraph 16 of the Multi-Party Property Acquisition Agreement, North River and RRIP further agreed to reimburse A.P. for the cost of any legal, expert, or other fees expended by A.P. arising from such claims.

18.     On or about June 1997, A.P. and North River entered into a valid contract (the "Purchase and Sale Agreement"), pursuant to which A.P. agreed to sell certain property located in Edgewater, New Jersey to North River. A copy of the Purchase and Sale Agreement is annexed hereto as Exhibit B.

19.     Daibes executed the Purchase and Sale Agreement on behalf of North River as the president and managing member of North River.

20.     On or about August 25, 1997, A.P. and North River entered into a valid contract (the "Parking Lot Agreement"), pursuant to which A.P. agreed to sell certain property located in Edgewater, New Jersey to North River. A copy of the Parking Lot Agreement is annexed hereto as Exhibit C.

21.     Daibes executed the Parking Lot Agreement on behalf of North River as the president and managing member of North River.

22.     The Purchase and Sale Agreement and the Parking Lot Agreement conveyed the Property that is the subject of the Multi-Party Property Acquisition Agreement and that is the subject of Plaintiffs' First Amended Complaint to North River.

23.     The Multi-Party Property Acquisition Agreement is incorporated by reference into the Purchase and Sale Agreement pursuant to paragraph 6(a)(ii) of the Purchase and Sale Agreement.

24.     The Multi-Party Property Acquisition Agreement is incorporated by reference into the Parking Lot Agreement pursuant to paragraph 7(d) of the Parking Lot Agreement.

25.     The Purchase and Sale Agreement contemplated that North River and RRIP would remove the abandoned industrial structures and develop the Property, at least in part, for residential use and pursuant to paragraph 2 of that agreement the purchase price for the Property was dependent on the number of units approved for construction on the Property.

26.     Pursuant to paragraph 7(f) of the Purchase and Sale Agreement, North River agreed to indemnify, defend, and hold A.P. harmless from any and all claims, including all foreseeable and unforeseeable consequential damages related to North River's (or, during North River's ownership of the Property, any operators' or third parties') use of the Property and/or any and all activities related thereto.

27.     Pursuant to paragraph 7(g) of the Purchase and Sale Agreement, North River expressly released and agreed to waive all rights it may have to seek contribution from A.P. for any response costs or claims that may arise as the result of the actions or inactions of A.P. or any

previous owner or operator of the Property relating to Hazardous Substances, as defined in the Purchase and Sale Agreement.

28.     The definition of Hazardous Substances in the Purchase and Sale Agreement includes PCBs.

29.     Pursuant to paragraph 7(c) of the Parking Lot Agreement, North River agreed to indemnify, defend, and hold A.P. harmless from any and all claims, including all foreseeable and unforeseeable consequential damages related to North River's (or, during North River's ownership of the Property, any operators' or third parties') use of the Property and/or any and all activities related thereto.

30.     Pursuant to paragraph 7(d) of the Parking Lot Agreement, North River expressly released and agreed to waive all rights it may have to seek contribution from A.P. for any response costs or claims that may arise as the result of the actions or inactions of A.P. or any previous owner or operator of the Property relating to Hazardous Substances, as defined in the Parking Lot Agreement.

31.     The definition of Hazardous Substances in the Parking Lot Agreement includes PCBs.

32.     Pursuant to Paragraph 8(b)(ii)(B) of the Parking Lot Agreement, Daibes executed a Personal Guaranty promising to pay liquidated damages to A.P. in the event that North River defaulted on the Multi-Party Agreement or the Parking Lot Agreement.

33.     Daibes' address given on the Personal Guaranty is the same as the address given by North River on the deeds conveying the Property from A.P. to North River.

34.     On or about January 14, 1999, North River filed a Deed Notice regarding the Property and in particular Building 12 with the Bergen County Clerk.

35.     The Deed Notice provided that it could be terminated only upon the filing with the Bergen County Clerk of an instrument executed by NJDEP.

36.     Daibes executed the Deed Notice on behalf of North River as the managing member of North River.

37.     On or about March 9, 1999, the New Jersey Department of Environmental Protection ("NJDEP") issued a no further action letter regarding the Property.

38.     By letter to Daibes dated March 15, 1999, NJDEP clarified that its March 1999 no further action letter did not apply to the portion of the Property that included Building 12.

39.     On or about March 13, 1999, A.P., North River, and RRIP entered into a valid contract (the "Environmental Indemnity Agreement"), pursuant to which North River and RRIP agreed to indemnify, defend, and hold A.P. harmless from any and all claims, including all foreseeable and unforeseeable consequential damages, occurring before, during, or after North River's ownership of the Property, relating to Building 12 and the land under and adjacent thereto including remediation and disposal costs and expenses related to PCBs.  A copy of the Environmental Indemnity Agreement is annexed hereto as Exhibit D.

40.     Daibes executed the Environmental Indemnity Agreement on behalf of North River as the president and managing member of North River.

41.     Daibes executed the Environmental Indemnity Agreement on behalf of RRIP as the president of RRIP.

42.     On or about February 12, 2003, NJDEP issued a restricted use no further action letter regarding the Property and in particular Building 12.  The February 2003 restricted use no further action letter required North River and its successors to comply with the Deed Notice.

43.     38 COAH was formed on or about May 22, 2006.

44.     On or about May 22, 2006, North River transferred the Property to 38 COAH.

45.     On or about October 19, 2010, 38 COAH recorded a Termination of Deed Notice regarding Building 12.  Daibes signed the Termination of Deed Notice on behalf of 38 COAH.

46.     The Borough of Edgewater's First Amended Complaint in *Borough of Edgewater v. Waterside Construction, LLC et al.* (Case No. 2:14-cv-05060 (ES-MAH)) (D.N.J.) ("*Borough of Edgewater* Case") alleges that, contrary to the requirements of the Deed Notice, the Termination of Deed Notice was not executed by NJDEP.

47.     Plaintiffs' First Amended Complaint alleges that two underground storage tanks on the Property contain PCBs and other unspecified hazardous materials.

48.     Plaintiffs' First Amended Complaint alleges that the presence of PCBs and other alleged hazardous materials has hindered Plaintiffs' ability to develop the Property.

49.     Plaintiffs' excavation on the Property in the course of development disturbed and spread such alleged PCBs and other hazardous materials on the Property.

50.     On information and belief, Daibes, as the managing member of the Plaintiff limited liability companies, has participated and does participate in decision-making regarding excavation on the Property, demolition of structures on the Property, and disposal of the alleged PCBs and other hazardous materials.

## COUNT I

51.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 50 of these Counterclaims as if set forth more fully herein.

52.     The First Amended Complaint in the *Borough of Edgewater* Case alleges that certain entities controlled by Daibes, including North River, deposited fill material contaminated with PCBs at Veteran's Field, a public park owned by the Borough of Edgewater.

24

53.     The First Amended Complaint in the *Borough of Edgewater* Case further alleges that said contaminated fill material was transported from the same Property that is the subject of this action.

54.     All named parties to this action are defendants or third-party defendants in the *Borough of Edgewater* Case.

55.     The Multi-Party Property Acquisition Agreement is a valid contract between A.P., North River, and RRIP.

56.     A.P. has duly performed all of its obligations under the Multi-Party Property Acquisition Agreement.

57.     Although Alcoa continues to deny the allegations that contaminated fill material transported to or disposed at Veteran's Field originated at the Alcoa Site as defined in the First Amended Complaint in the *Borough of Edgewater* Case, to the extent it is shown that Plaintiffs or any other person caused contaminated fill material from the Property to be transported to or disposed at Veteran's Field, such transportation or disposal constitutes a breach of the Multi-Party Property Acquisition Agreement by North River and RRIP.

58.     As a direct and proximate result of North River and RRIP's breach of contract, Alcoa Domestic LLC, as successor in interest to A.P., has suffered damages in an amount to be determined at trial.

## COUNT II

59.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 58 of these Counterclaims as if set forth more fully herein.

60.     The Multi-Party Property Acquisition Agreement is a valid contract between A.P., North River, and RRIP.

61.     A.P. has duly performed its obligations under the Multi-Party Property Acquisition Agreement.

62.     The Purchase and Sale Agreement is a valid contract between A.P. and North River.

63.     A.P. has duly performed its obligations under the Purchase and Sale Agreement.

64.     The Parking Lot Agreement is a valid contract between A.P. and North River.

65.     A.P. has duly performed its obligations under the Parking Lot Agreement.

66.     The Environmental Indemnity Agreement is a valid contract between A.P., North River, and RRIP.

67.     A.P. has duly performed its obligations under the Environmental Indemnity Agreement.

68.     Although Alcoa continues to deny the allegations of the First Amended Complaint that underground storage tanks on the Property contain PCBs or some other hazardous materials, Alcoa Domestic LLC, as successor in interest to A.P., is entitled to indemnification in an amount to be determined at trial from North River and RRIP for any costs, expenses, or liability borne by Alcoa arising from the presence of such substances on the Property.

69.     Alcoa Domestic LLC, as successor in interest to A.P., is entitled to reimbursement from North River and RRIP for the cost of any legal, expert, or other fees expended by Alcoa arising from the presence of such substances on the Property.

## COUNT III

70.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 69 of these Counterclaims as if set forth more fully herein.

71.     While Alcoa denies any and all negligence or responsibility for any damages, in the event that Alcoa is adjudged liable for any loss, damage, or injury the Plaintiffs may have sustained, Alcoa is entitled to assert, and hereby asserts, a counterclaim for contribution against Plaintiffs and Counterclaim-Defendants pursuant to the provisions of the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. § 2A:53A-1 *et seq.* and the Comparative Negligence Act, N.J.S.A. § 2A:15-5.1 *et seq.*

## COUNT IV

72.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 71 of these Counterclaims as if set forth more fully herein.

73.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1) provides that "any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under . . . section 9607(a) of this title."

74.     Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any "covered person" "shall be liable for . . . necessary costs of response by any other person consistent with the national contingency plan."

75.     Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), provides that the owner and operator of a facility is liable as a "covered person."

76.     Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), provides that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" is liable as a "covered person."

77.     Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), provides that "any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person" is liable as a "covered person."

78.     Plaintiffs and Daibes are "persons" within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

79.     The Property is a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

80.     The Plaintiffs' First Amended Complaint alleges that there has been a release, threatened release, or disposal at the Property of PCBs and other unspecified hazardous materials, all of which are alleged to be "hazardous substances" under CERCLA § 101(14), 42 U.S.C. § 9601(14).

81.     Plaintiffs and Daibes are or were owners and operators of the Property within the meaning of CERCLA § 101(20), 42 U.S.C. § 9601(20).

82.     As owners and operators of a facility at which Plaintiffs allege there has been a release, threatened release, or disposal of hazardous substances, Plaintiffs and Daibes are liable under CERCLA § 107(a)(1)-(2), 42 U.S.C. § 9607(a)(1)-(2).

83.     Plaintiffs and Daibes have arranged, by contract, agreement, or otherwise, for disposal of hazardous substances at the Property and as such are liable under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3).

84.     Pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1), Alcoa is entitled to maintain a contribution action against Plaintiffs and Daibes with respect to any response costs which Plaintiffs seek to recover from Alcoa.

## COUNT V

85.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 84 of these Counterclaims as if set forth more fully herein.

86.     The New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-23.11 *et seq.*, provides, in pertinent part, that "[w]henever one or more dischargers or persons clean up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of cleanup." N.J.S.A. § 58:10-23.11f(a)(2).

87.     Under the Spill Act, responsible parties are jointly and severally liable to the State for cleanup and removal costs related to discharges of hazardous substances.

88.     PCBs are a hazardous substance as defined in the Spill Act, N.J.S.A. § 58:10-23.11b.

89.     The First Amended Complaint alleges that "discharges" within the meaning of the Spill Act, N.J.S.A. § 58:10-23.11b, have occurred at the Property.

90.     Plaintiffs are dischargers or persons in any way responsible for a discharge under the Spill Act, as the alleged discharges have occurred during Plaintiffs' ownership of the Property.

91.     Daibes is a discharger or person in any way responsible for a discharge under the Spill Act, as he directed the day-to-day operations of Plaintiffs while the alleged discharges occurred at the Plaintiffs' Property.

92.     Pursuant to the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2), Alcoa is entitled to maintain a contribution action against Plaintiffs and Daibes with respect to any cleanup and removal costs which Plaintiffs seek to recover from Alcoa.

## COUNT VI

93.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 92 of these Counterclaims as if set forth more fully herein.

94.     On information and belief, Daibes created North River, 38 COAH, and RRIP as vehicles for his personal investment in the Property.

95.     Daibes formed North River and RRIP for the sole purpose of acquiring and developing the Property, as these entities were formed in the month before North River acquired the Property and North River and RRIP executed the Multi-Party Property Acquisition Agreement.

96.     Daibes formed 38 COAH for the sole purpose of transferring the Property between LLCs that he controls, as Daibes formed 38 COAH on the same day that North River transferred the Property to 38 COAH.

97.     Daibes is and has been the sole principal working on behalf of North River, 38 COAH, and RRIP.  These entities are facades for the operations of Daibes, their dominant member or shareholder.

98.     Daibes executed various agreements in his dealings with Alcoa as the managing member or shareholder of North River, 38 COAH, and RRIP.  In the course of Alcoa's dealings with North River, 38 COAH, and RRIP, no person other than Daibes acted on behalf of those entities.

99.     Publicly available documents indicate that Daibes is the sole principal of North River, 38 COAH, and RRIP.

100.    On information and belief, North River, 38 COAH, and RRIP are grossly undercapitalized.

30

101.     Daibes was aware of the presence of hazardous substances, including PCBs, on the Property when North River acquired the Property and when North River transferred the Property to 38 COAH.

102.     On information and belief, North River, 38 COAH, and RRIP do not and have not held significant assets other than the Property itself.  Given Daibes' knowledge of contamination on the Property, he formed these entities in an attempt to avoid potential environmental liability.

103.     On information and belief, North River, 38 COAH, and RRIP have not observed corporate formalities and do not maintain corporate records.

104.     Furthermore, RRIP has been an inactive corporation since 2005 due to its failure to file its annual report with the State of New Jersey for two consecutive years.

105.     There is such unity of interest and ownership that the separate personalities of Daibes and North River, 38 COAH, and RRIP no longer exist.  Daibes has abused the corporate form by creating these limited liability companies and corporation to advance his own personal interests.

106.     The Borough of Edgewater has alleged that 38 COAH filed the Termination of Deed Notice without NJDEP approval in order to begin the development of the Property that gave rise to Plaintiffs' First Amended Complaint.

107.     By wrongfully filing the Termination of Deed Notice, Daibes and 38 COAH have perpetrated a fraud or injustice or otherwise circumvented the law.

108.     By causing Plaintiffs' to bring this First Amended Complaint against Alcoa, Daibes seeks to perpetrate a fraud or injustice and circumvent the clear terms of the agreements entered into by his corporate alter egos that indemnify and release Alcoa from Plaintiffs' claims.

109.    Therefore, Daibes should be held liable for the debts and obligations that North River, 38 COAH, and RRIP, his corporate alter egos, owe to Alcoa.

### PRAYER FOR RELIEF

WHEREFORE, Alcoa respectfully requests the following relief from this Court:

A.    Enter judgment in favor of Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc., and against Plaintiff North River Mews Associates, LLC, Counterclaim-Defendant River Road Improvement Phase II, Inc., and Counterclaim-Defendant Fred A. Daibes finding that North River Mews Associates, LLC and River Road Improvement Phase II, Inc. have breached their contractual obligations to Alcoa Domestic LLC;

B.    Enter judgment for all damages, monetary, consequential, and otherwise, available under law to Alcoa Domestic LLC arising from Plaintiff North River Mews Associates, LLC, Counterclaim-Defendant River Road Improvement Phase II, Inc., and Counterclaim-Defendant Fred A. Daibes' breaches of contract;

C.    Declare that Plaintiff North River Mews Associates, LLC, Counterclaim-Defendant River Road Improvement Phase II, Inc., and Counterclaim-Defendant Fred A. Daibes are obligated to indemnify, defend, and hold harmless Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc., with respect to the Plaintiffs' claims in this action and any crossclaims, third-party claims, or other claims that may be asserted against Alcoa in this action;

D.    Order Plaintiff North River Mews Associates, LLC, Counterclaim-Defendant River Road Improvement Phase II, Inc., and Counterclaim-Defendant Fred A. Daibes to reimburse Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc., for

the cost of legal, expert, or other fees occurred by Alcoa Domestic LLC arising from the demolition and removal of structures on the Property;

      E.      Declare that Plaintiffs and Counterclaim-Defendant Fred A. Daibes are liable under CERCLA Section 113(f) for Plaintiffs' and Fred A. Daibes' share of necessary response costs incurred by Plaintiffs consistent with the national contingency plan in connection with the contamination alleged in the First Amended Complaint;

      F.      Award Alcoa an amount determined by the Court to satisfy the obligation of each Plaintiff and Counterclaim-Defendant Fred A. Daibes under CERCLA;

      G.      Declare that Plaintiffs and Counterclaim-Defendant Fred A. Daibes are liable to Alcoa for contribution for costs incurred pursuant to the New Jersey Spill Act;

      H.      Award Alcoa an amount determined by the Court to satisfy the obligation of each Plaintiff and of Counterclaim-Defendant Fred A. Daibes under the New Jersey Spill Act; and

      I.      Award Alcoa interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other and further relief as the Court determines is just, equitable, and appropriate.

Dated: April 6, 2015

                        Respectfully submitted,

                        **K&L GATES LLP**

                        By: /s/ Michael E. Waller
                            Michael E. Waller
                            William H. Hyatt, Jr.
                            One Newark Center, Tenth Floor
                            Newark, New Jersey 07102
                            Tel:  (973) 848-4000
                            michael.waller@klgates.com
                            william.hyatt@klgates.com

                            *Attorneys for Defendant Alcoa Inc. and Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc.*

**CERTIFICATION PURSUANT TO RULE 11.2 OF THE LOCAL CIVIL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

I hereby certify that the matter in controversy is the subject of another action pending in this Court, *Borough of Edgewater v. Waterside Construction, LLC et al.*, Case No. 2:14-cv-05060 (ES-MAH).  The Plaintiff in that action is the Borough of Edgewater.  The named Defendants in that action are Waterside Construction, LLC; 38 COAH, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; Fred A. Daibes; TERMS Environmental Services, Inc.; Alcoa Inc. (incorrectly named as "Aluminum Company of America"); and A.P. New Jersey, Inc.  Third-Party Plaintiff Alcoa Domestic LLC, as successor in interest to A.P. New Jersey, Inc., has joined the County of Bergen and River Road Improvement Phase II, Inc. as Third-Party Defendants.  Third-Party Plaintiffs Waterside Construction, LLC; 38 COAH, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes have joined Neglia Engineering Associates as a Third-Party Defendant.

Dated: April 6, 2015

By: _____
Michael E. Waller

34