<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NORTH RIVER MEWS ASSOCIATES, LLC and 38 COAH ASSOCIATES, LLC,** | |
| *Plaintiffs*, | **Civil Action No. 14-8129** |
| **v.** | **OPINION** |
| **ALCOA CORPORATION, et al.,** | |
| *Defendants.* | |

This matter comes before the Court by way of Defendants Alcoa Inc. ("Alcoa") and Alcoa Domestic, LLC's (collectively, "Moving Defendants") motion to dismiss.  Dkt. No. 31.  Moving Defendants seek dismissal based upon contractual releases, the statute of limitations for tort claims, and federal preemption.   For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.  BACKGROUND

This case concerns environmental contamination on a piece of property which was sold to Plaintiff North River Mews Associates, LLC and 38 COAH Associates, LLC (collectively, "Plaintiffs").  Second Am. Compl. ¶ 1, Dkt. No. 28.  This piece of property is at 660 River Road in Edgewater, New Jersey.  <u>Id.</u> ¶ 3.  The property has been vacant since 1978 and is now being developed.  <u>Id.</u> ¶ 4.

Defendant Alcoa owned the property from 1917 to 1968 and operated a manufacturing facility on site.  <u>Id.</u> ¶ 5.  Its successor, Alcoa Domestic LLC, a successor to A.P. New Jersey, Inc. ("A.P."), also owned the property.  <u>Id.</u> ¶ 6.  Finally, Defendant Enviro-Sciences (of Delaware) Inc.

("Enviro-Sciences") is an environmental consultant that was retained by Plaintiffs to investigate the property.  Id. ¶ 7.

Previous environmental investigations discovered a variety of contaminants at the site.  Id. ¶ 18.  Plaintiffs believed that the property had been properly investigated and remediated through a remediation plan approved by the New Jersey Department of Environmental Protection.  Id. ¶ 21.  However, in October 2013, two underground storage tanks were discovered at the property.  Id. ¶ 14.  These tanks, and the contamination emanating from them, had not been discovered by Enviro-Sciences' environmental inspections on the site.  Id. ¶ 20.

Following discovery of the tanks, the Borough of Edgewater served a stop work order on Plaintiffs.  Id. ¶ 26.  Plaintiffs were unaware of these tanks' existence before then.  Id.  The tanks contain oil that is contaminated with Polychlorinated Biphenyls ("PCBs") and other hazardous materials.  Id. ¶ 15.  PCBs were used as an insulator in electrical equipment, among other industrial applications.  Id. ¶ 23.  They are hazardous.  Id.  Plaintiffs speculate that because PCBs are not a constituent of fuel oil, their combination with fuel oil here may have been an attempt to surreptitiously burn off the hazardous substances to avoid proper disposal methods (and costs).  Id. ¶ 24.  After excavating property around the tanks, Plaintiffs discovered that the surrounding ground was also contaminated.  Id. ¶ 16.  The Moving Defendants never disclosed to Plaintiffs the presence of these underground storage tanks and the contamination around them.  Id. ¶ 17.

Earlier, as part of the sale of the property from Plaintiffs to Defendants, the Moving Defendants had agreed to pay for the costs of remediation and disposal of certain PCB-contaminated materials.  Id. ¶ 25.  Plaintiffs retained a licensed site remediation professional to develop a remediation plan which includes a self-implemented disposal plan to provide for cleanup, removal, and disposal or the PCB-contaminated materials and associated hazardous

substances.  Id. ¶ 27.  The stop work order was lifted, but plans to remediate the property have not

yet been approved, so development of the site remains halted.  Id. ¶ 28.

Plaintiffs bring the following counts against the Moving Defendants: (1) Cost Recovery

under Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9607(a); (2) contribution of payments made pursuant to CERCLA, 42

U.S.C. § 113; (3) declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2), 28 U.S.C. §§ 2201 &

2202, and N.J.S.A. § 2A:16-50; (4) strict liability in tort; (5) negligence; (6) New Jersey's Spill

Act Contribution, N.J.S.A § 58:10-23:11; (7) negligent or fraudulent concealment; (8) breach of

contract; (9) unjust enrichment; and (10) breach of implied covenant of good faith and fair dealing.[1]

Moving Defendants seek to dismiss all claims as released pursuant to the purchase contract and a

subsequent agreement.  They also seek to dismiss the common law tort claims as time-barred.

Finally, they argue that unjust enrichment is preempted by CERCLA.  The Court discusses these

arguments below.

## II.  LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts

in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it

appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."

Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above

---

[1] The Second Amended Complaint contains three additional counts against Enviro-Sciences, the
consulting company that provided an opinion as to the environmental damage on the site.  Enviro-
Sciences did not move to dismiss, so these counts are not relevant to this opinion.

the speculative level." Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard, namely: "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

## III. ANALYSIS

### A. Contractual Releases

Moving Defendants argue that both the purchase contract ("1997 Agreement") and a subsequent agreement ("1999 Agreement") releases them from any liability for non-contract claims.[2]  The Court disagrees because these agreements do not unambiguously release all claims and may be vitiated by the alleged fraudulent inducement.

### 1. Ambiguity in Purchase Contract

---

[2] Defendant argues that the 1997 Agreement releases Counts 1-7, and that the 1999 Agreement releases the implied covenant of good faith and fair dealing (Count 9) as well.  Because the Court finds these releases do not preclude any claims at this stage, the Court need not address whether the 1999 Agreement covers the implied covenant of good faith and fair dealing.

The 1997 Agreement does not preclude suit at this stage because its release language is ambiguous.  The relevant language states:

> Buyer expressly releases Seller and agrees to waive all rights that it may have to seek contribution from Seller for any response costs or claims that may arise as a result of the actions or inactions of Seller and any previous owner, operator or third party on or with respect to the Property relating to Hazardous Substances.

Agreement to Purchase and Sell Real Estate, Waller Cert. Ex. 2 ¶ 7(g), Dkt. No. 31-2.[3]  On its face, the contract is ambiguous as to whether it releases only the right to seek contribution (i.e. whether "seek contribution" modifies both "response costs" and "claims") or whether it is a blanket release. Moving Defendants argue that "contribution" should not be given its technical meaning as a term of art, but rather its common meaning.  The technical meaning would not release the claims here; the common meaning would.  This is a textbook example of contractual ambiguity.  In such circumstances, the Court will construe the contract in the light most favorable to the non-moving party.  See Educ. Impact, Inc. v. Danielson, No. 14-937, 2015 U.S. Dist. LEXIS 9467, at *20 (D.N.J. Jan. 28, 2015) ("the facts as alleged in the Amended Complaint, and other documentary evidence attached to the pleading [] must be constructed in the light most favorable to . . . the non-moving party.").  This dispute is not appropriately resolved on a motion to dismiss.  See Schwartz v. Avis Rent a Car Sys., LLC, 2012 U.S. Dist. LEXIS 189251, at *21 (D.N.J. Sept. 18, 2012) ("ambiguous contractual provisions raise questions of fact that are not appropriately decided on a motion to dismiss").

---

[3] The 1997 Agreement may be considered as it is essential to Plaintiffs' claims for breach of contract.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Documents "integral to or explicitly relied upon in the complaint" may be considered by the Court on a motion to dismiss).  A plaintiff cannot "survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Second Amended Complaint relies upon the 1997 Agreement for its breach of contract claims.

### 2.   Ambiguity in Subsequent Contract

Defendants claim that the 1999 Agreement, a follow-up environmental indemnity agreement, relieved Alcoa of any obligation for cleanup costs related to Building 12. Environmental Indemnity Agreement, Waller Cert. Ex. 8, Dkt. No. 31-2.

The 1999 Agreement does not unambiguously release any liability here.[4]  It applies "to the extent that Building 12 is not demolished."  Id. ¶ 2.  Plaintiffs claim that Building 12 has been demolished, which is how the underground storage tanks were found.  Second Am. Compl. ¶¶ 26-28, 70-72.  If true, then the text of the 1999 Agreement may not release liability in this case.  Other interpretations may exist, but this contractual ambiguity prevents this contract from unambiguously releasing liability in this case.  The matter must proceed through discovery.  See Educ. Impact, Inc., 2015 U.S. Dist. LEXIS 9467, at *20 ("[T]he facts as alleged in the Amended Complaint, and other documentary evidence attached to the pleading [] must be constructed in the light most favorable to . . . the non-moving party.").

### 3.   The Contracts May Be Vitiated

Plaintiffs also argue that the concealment of the underground storage tanks here constitutes fraudulent inducement, which may invalidate the release in the two agreements.  See Ingram Corp. v. J. Ray McDermott & Co., 698 F.2d 1295, 1314 (5th Cir. 1983) ("Fraudulent inducement . . . can vitiate a release.  This is hornbook law.").  Plaintiffs' claim for fraudulent inducement has not been challenged as inadequately pled, and if it prevails, it might vitiate the releases.  At this stage, the Court cannot find that the releases unambiguously preclude the claims being brought in this suit.

---

[4] There is a question as to whether the 1999 Agreement is appropriate to consider on a motion to dismiss, including whether it is appropriately considered a modification to the 1997 Agreement or a separate agreement altogether.  Because the 1999 Agreement does not preclude a claim at this stage, the Court will not reach that nuanced question.

**B.  Statute of Limitations on Tort Claims**

The Moving Defendants argue that the common law tort claims, including strict liability, negligence, and fraud, are precluded by New Jersey's statute of limitations on tort claims.

The statute of limitations for Plaintiffs' common law tort claims is six years.  N.J.S.A. 2A:14-1; Amland Props. Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1189–90 (D.N.J. 1992) (negligence and strict liability); S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd., 181 F.3d 410, 425 (3d Cir. 1999) (fraud).  However, a cause of action does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."  R.L. v. Voytac, 199 N.J. 285, 299 (2009) (citations omitted).

Plaintiffs did not discover the underground storage tanks until October 2013.  Second Am. Compl. ¶ 14.  It is not clear whether Plaintiffs should have discovered them earlier—i.e. by December 31, 2008.  The tanks were hidden under Building 12, with a layer of concrete used to cover up any access to the tanks via the manholes.  Id. ¶¶ 71-72.  Even though other underground storage tanks were listed on other environmental reports, these were not.  Id. ¶ 73.  And an environmental examination conducted by Enviro-Sciences did not turn up the existence of these tanks.  Id. ¶¶ 19-20.  On these facts, which must be taken as true at this stage, the Court cannot find that reasonable diligence should have led to the discovery of these tanks before December 31, 2008.

Moving Defendants alternatively argue that Plaintiffs knew about PCB contamination generally, so the right to sue over that contamination began to run as of the 1997 date of disclosure. This is unpersuasive.  For one, this lawsuit is not only about PCBs; the Second Amended Complaint alleges PCBs, fuel oil, and other hazardous materials were in and around the tanks.  Id.

¶ 15.   Second, even if knowledge of the contamination of the property triggered a duty to investigate, there is no basis within the pleadings to believe that a reasonably diligent investigation would have discovered the hidden underground storage tanks.  The Court therefore will not dismiss the tort claims on this basis.  See In re Aspartame Antitrust Litig., No. 06-1732, 2007 U.S. Dist. LEXIS 16995, at *21 (E.D. Pa. Jan. 18, 2007) ("Issues of diligence and constructive notice, which are inherently factual, generally should not be decided on a motion to dismiss.").

### C.  Unjust Enrichment

Moving Defendants argue that the unjust enrichment claim is preempted by CERCLA.  The Court agrees.   Federal preemption precludes unjust enrichment claims in CERCLA's environmental cleanup context.  See Lenox Inc. v. Reuben Smith Rubbish Removal, 91 F. Supp. 2d 743, 753 (D.N.J. 2000) (State law claims for unjust enrichment are preempted by CERCLA); Continental Title Co. v. Peoples Gas Light & Coke Co., No. 96-3257, 1999 WL 1250666 (N.D. Ill. March 18, 1999) (same).  As such, Plaintiffs' claim for unjust enrichment is dismissed.

## IV. CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**.  An appropriate order accompanies this opinion.

Date: May 19, 2016                              _/s Madeline Cox Arleo_____
                                                HON. MADELINE COX ARLEO
                                                UNITED STATES DISTRICT JUDGE